FILED
2021 Dec-27  PM 02:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| FELITA ELLIOTT WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: |
| | ) | |
| v. | ) | _____ |
| | ) | |
| AT&T MOBILITY SERVICES, | ) | **JURY DEMAND** |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

## I.    INTRODUCTION

1.    This is an action for equitable and legal relief to redress unlawful
discrimination based on disability, race, sex, and retaliation, against the
plaintiff. This action is brought pursuant to Title I of the Americans with
Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 *et. seq.*, for the
defendant's disability discrimination and retaliation in violation of the ADA.
Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act
of 1991, 42 U.S.C. §§2000e *et seq.* (hereinafter "Title VII"), which provides
for relief from discrimination on the basis of race, sex, and retaliation, and 42
U.S.C. §1981 (hereinafter §1981), which provides for relief against
discrimination on the basis of race and retaliation. The plaintiff seeks a

1

declaratory relief, injunctive relief, and other equitable remedies, including backpay and reinstatement, as well as compensatory and punitive damages, costs, attorneys' fees and expenses.

## II.    JURISDICTION & VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(4), 2201, 2202, and 42 U.S.C. §2000e-5(f)(3).

3.    Venue in this district is proper pursuant to 28 U.S.C. §1391, because the plaintiff resides in this district, the defendant operates in this district, and a substantial part of the unlawful conduct giving rise to the claims occurred in this district.

4.    The plaintiff requests a jury trial on all equitable claims and defenses and all issues triable by jury.

## III.   ADMINISTRATIVE PREREQUISITES

5.    The plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII and the ADA. The plaintiff timely filed a charge of discrimination (Charge Number 420-2021-01435) with the Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII of the Civil Rights Act of 1964 and the ADA alleging, *inter alia*, she was denied a reasonable accommodation and demoted because of her disability or

perceived disability, because of her race, color, and/or because of her sex. Attachment 1. The EEOC issued the plaintiff Notice of Right to Sue dated October 1, 2021, which the plaintiff received several days later and timely filed this Complaint within 90 days of receipt of notice. Attachment 2.

## IV.   **PARTIES**

6.   The plaintiff Felita Elliott Wilson ("Wilson" or "plaintiff") is an African-American female citizen of the United States, is over the age of nineteen (19), and is a resident of the State of Alabama. The plaintiff was employed by defendant AT&T Mobility Services, LLC. The plaintiff is an individual with a disability, has a history of a disability, and is regarded by defendant and its directors, officers, managers, supervisors and personnel department as disabled. Despite this disability, with or without reasonable accommodation, the plaintiff could perform the essential functions of her position with defendant, which was Integrated Soltions Manager (ISM). Consequently, the plaintiff is a qualified individual with a disability, as defined under the ADA.

7.   The defendant, AT&T Mobility Services, LLC (hereinafter referred to as "AT&T" or "defendant"), is an employer subject to suit under the ADA, as amended, and Title VII, as amended. The defendant is a person subject to suit according to 42 U.S.C. §1981.

3

## V.   <u>GENERAL FACTS</u>

8.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

9.   In 2006, the plaintiff was hired by AT&T as a sales representative.

10.   During the next fifteen years, Wilson was promoted several times, eventually promoted to the position of Integrated Solutions Manager (ISM).

11.   Wilson has an autoimmune, inflammatory bowel disease called Ulcerative Colitis.

12.   The plaintiff was diagnosed when she was sixteen (16) years of age. The condition has worsened over the years and has spread through most of her colon over the past couple of years. The spread causes her to have bouts of inflammation more frequently and for longer periods of time.

13.   In October 2019, the plaintiff was hired into the ISM position by Director Anthony Wilson (Caucasian Male).

14.   In March 2020, after the COVID-19 pandemic began, AT&T released a statement that most corporate positions could transition to work from home and that each department should accommodate employees as best they could.

15.   The plaintiff's doctor emailed Anthony Wilson a letter stating that she needed to work from home due to her risk if she contracted COVID-19.

4

16.    On June 12, 2020, Wilson put the plaintiff on a Corrective Action Plan (CAP) after her team missed the monthly goal for February 2020.

17.    This situation was unusual for at least two reasons. First, the plaintiff had never heard of an ISM being placed on a CAP for missing a goal for one month. Second, the fact that Wilson waited until June was strange.

18.    AT&T did not shut down their department until March 22, 2020, but Director Anthony Wilson never raised the issue during early February, and not until after the plaintiff's doctor sent the letter about her condition.

19.    On July 29, 2020, the plaintiff took FMLA leave/short-term disability because the inflammation was particularly bad.

20.    On September 1, 2020, the plaintiff's doctors started her on a new treatment of Humira injections, which is an immunosuppressant.

21.    The plaintiff was already considered a "high risk" patient if she were to contract COVID-19. The plaintiff's doctors were concerned infection might be fatal. The treatments substantially increase the risk factor.

22.    While the plaintiff was out on leave, she applied for an extension of her leave based on the new treatment regimen.

23.    Defendant denied her request for an extension.

24.    While the plaintiff was out on leave, Wilson left the Director position on July

31, 2020, and took another position with AT&T.

25.    Valerie Anders (African American female) replaced Anthony Wilson during August 2020, while the plaintiff was out.

26.    On December 28, 2020, after the plaintiff's request for an extension was denied, Anders called her and asked when she would return to work.

27.    The plaintiff told Anders that she planned to return on Monday, January 4, 2021.

28.    She also told Anders that she planned to request an accommodation based on her disability.

29.    The plaintiff told Anders that her doctor instructed her not enter enclosed spaces, such as vehicles or customers' homes which meant she could not go out into "the field" to do observations.

30.    The plaintiff told Anders that could work from the hub/office and do everything the job required except going inside of customers' homes.

31.    Anders told the plaintiff that she would not approve a request for an accommodation and said she needed to look for another position.

32.    The plaintiff told Anders she would call the Integrated Disability Service Center and get back with her.

33.    On January 4, 2021, the plaintiff returned to work.

6

34.   The plaintiff spoke with Anders and told her that she made the request for a job accommodation.

35.   Anders told the plaintiff that she should not be at work if it was not what she wanted to do.

36.   The plaintiff told Anders she wanted to be at work and planned to give 100% as she always had.

37.   Anders told the plaintiff that going out into the field was required as part of her job.

38.   During March, April, and May 2020, Defendant had shut down the department and they performed work virtually from home.

39.   The plaintiff told Anders that during those months she had done a great job coaching her team via telephone and FaceTime.

40.   The plaintiff also reminded Anders that during June 2020 she had worked from home for three (3) weeks when one of her daughters had COVID and had done a great job of coaching her team via telephone and FaceTime.

41.   The plaintiff told Anders that she was able to stay in closer contact and had more observations that month than ever.

42.   The plaintiff explained that she did not believe it was essential to physically enter the customers' homes to do perform her job duties.

43.  Anders mentioned that the plaintiff had been employed for fifteen (15) years and admitted that this length of service meant that she was a good employee.

44.  Anders said she did not want to see the plaintiff's fifteen (15) years "go down the drain."

45.  Anders said that she planned to reactivate the CAP and convert it to a Performance Improvement Plan (PIP).

46.  Anders said that one of the "action items" on the PIP would be for the plaintiff to go into the field with her experts three (3) times per week.

47.  The plaintiff reminded Anders that her doctors had told her not to go out into the field and that she was not willing to risk her health due to her condition.

48.  The plaintiff told Anders that she could do the job effectively without being in the field three (3) times a week.

49.  The plaintiff told Anders that she could successfully lead her team and follow the plan and come off of the PIP in 30 days.

50.  The plaintiff told Anders that she should not have been on the CAP because you have to miss three (3) months of goals to be put on a CAP and she was put on it for missing one (1) month.

51.  Anders said that did not matter to her and that she could not accommodate the plaintiff's job accommodation request.

8

52.  Anders said that if the plaintiff could not go out into the field, then she would have missed a step on the PIP and be terminated automatically.

53.  Anders asked the plaintiff whether she had thought about other positions like sales representative or Assistant Store Manager (ASM), which were lower-paid and less prestigious positions.

54.  Anders said that the plaintiff could take that position and work her way back up.

55.  The plaintiff told Anders that she would not want to work as a sales representative position because she started with the company in 2006 as a sales representative.

56.  The plaintiff told Anders that she would look and see what positions were out there and apply, since she desperately needed a job and health care benefits.

57.  On two occasions, the plaintiff suggested to Anders that she permit her and Helen Frey (Caucasian female), who was the plaintiff's Sales Support Lead (SSL), to switch positions. The roles were very similar except SSLs were not required to go into the field.

58.  Anders ignored this suggestion even though Defendant made Frey the acting ISM while the plaintiff was out on disability and gave her the plaintiff's team.

59.  Defendant subsequently promoted Frey to ISM and hired Jared French

(African American male) for the SSL position on February 1, 2021.

60.   The timing of these moves a circumstantial evidence that Anders did not expect or want the plaintiff to return to the ISM position when she returned from FMLA/short-term disability leave.

61.   On January 5, 2021, the plaintiff told Anders that she decided to apply for the ASM and Telesales Manager position (TSM).

62.   On January 11, 2021, the plaintiff met with Anders who asked her what she wanted to do.

63.   The plaintiff told Anders that she did not plan to resign and that she had applied for a few positions that were available but had not heard back.

64.   The plaintiff told Anders that if she had to move forward with the PIP then that was fine with her.

65.   Anders pressured the plaintiff to take a sales representative position, which she did not want and would have meant a substantial reduction in pay.

66.   Anders said that if the plaintiff remained in the ISM position, she would have to move forward with the PIP.

67.   Anders said the plaintiff would be terminated because she could not go into the field.

68.   The plaintiff told Anders she understood but asked once again if she could

accommodate her.

69.    Anders said she could not accommodate the plaintiff.

70.    The plaintiff said that she could not make Anders accommodate her and cannot make anyone hire her so she would work and do the best she could with the job until whatever happens.

71.    The plaintiff again told Andres that she felt she was successful coaching and running her team from home in June when her daughter had COVID-19 and it was not essential that she be physically in the field.

72.    On January 12, 2021, the plaintiff texted and emailed Anders to let her know she had applied for a Retail Sales Consultant (RSC) position at the Gardendale retail store.

73.    When the plaintiff got to the office, she spoke with Anders for a few minutes.

74.    Anders stated that she got the plaintiff's message.

75.    The plaintiff told Anders that she got the emails that the management positions she applied for were filled so they were off the table therefore she would be interested in RSC to be able to keep her benefits and a steady source of income.

76.    The plaintiff told her she would think she would at least be able to get a sales representative position, but she knew nothing was guaranteed.

77.   Anders said that she had made a few calls already about the RSC positions and would make a few more to see what she could do, but it may not be at the Gardendale location.

78.   The plaintiff told Anders that was fine, and that she needed to stay employed and keep her benefits.

79.   On January 15, 2021, Human Resources Manager Karen Chow called the plaintiff.

80.   Chow stated she saw the plaintiff's application come through for the RSC position and she wanted to make sure that she really wanted to be considered for it.

81.   The plaintiff told Chow she wanted the position and explained the job accommodation situation and her need for a position that was a demotion.

82.   The plaintiff explained her concerns with being in retail because the COVID-19 numbers are highest in the stores because she was on medication but that she needed to keep a job and benefits.

83.   Chow told the plaintiff that going to RSC benefits would be different and that she would be at max pay at $20.08 per hour with a commission of $1,140.

84.   Chow stated that if the plaintiff ended up working her way back up, she would not get paid like she had before and that she would have a new pay structure.

85.  The plaintiff told Chow that she understood and would go forward with the RSC position.

86.  On January 20, 2021, the plaintiff was offered an RSC position which she accepted.

87.  That evening Anders had a team staff call with all of the ISMs.

88.  On the conference call Anders instructed her ISMs to have experts do "virtual follow-up calls" and advised the managers to listen in on these calls as they have been doing.

89.  Anders stated that they could listen in to coach and document. Anders then told the team of ISMs that the plaintiff was leaving headed to a store starting Monday.

90.  Anders said, "I don't even know what store it is."

91.  The plaintiff spoke up and said McCalla.

92.  Anders then told everyone on the call, "I was able to pull some strings to keep her around so she can stay with the company. It was a better fit for her. She's spent the last few weeks catching up."

93.  On February 01, 2021, the plaintiff received the letter from the Integrated Disability Service Center (IDSC) regarding the job accommodation she had filed which stated IDSC would approve the accommodation from January 1,

2021 until May 1, 2021.

## VI.    DAMAGES

94.    The defendant has intentionally and, with malice or reckless indifference, discriminated against the plaintiff on the basis of the plaintiff's race, gender, disability, history of disability, and/or perceived disability, with respect to the terms, conditions, and privileges of employment.

95.    The plaintiff is now suffering, and will continue to suffer, irreparable injury from the defendant's unlawful conduct as set forth herein unless enjoined by this Court.

96.    The plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish and lost wages and other pecuniary losses as a consequence of the defendant's unlawful conduct.

97.    The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory damages, punitive damages and liquidated damages is his only means of securing adequate relief.

### COUNT I: VIOLATIONS OF THE
### AMERICANS WITH DISABILITIES ACT

98.    The plaintiff re-alleges all of the allegations in the complaint and incorporates

14

the same by reference herein.

99.   The plaintiff is a person with a disability, has a history of disability, and/or is regarded as disabled. *See* 42 U.S.C. § 12102.

100.  The defendant is an employer in accordance with 42 U.S.C. §12111(5).

101.  The defendant employed at least fifteen (15) employees for each working day during each of the twenty (20) or more calendar work weeks in the applicable calendar year.

102.  The plaintiff is a qualified individual with a disability as defined under the ADA. Furthermore, the defendant perceived the plaintiff as disabled and had a record of the plaintiff's disability.

103.  The plaintiff requested reasonable accommodations as provided for by the defendant's policy and federal law.

104.  Despite the request for reasonable accommodations, the defendant forced the plaintiff to take a lesser job with a large reduction in pay.

105.  The defendant refused to make a reasonable accommodation to the plaintiff's known or perceived serious health condition, which is a violation of the ADA. Such an accommodation would not have imposed an undue hardship on the operation of the defendant's business.

106.  Despite the plaintiff's disability, with or without reasonable accommodation,

she is able to perform the essential functions of his job. Thus, the plaintiff meets the definition of a "qualified individual with a disability". *See* 42 U.S.C. §12111 and 42 U.S.C. §12131(2).

107. By forcing the plaintiff into a lesser job with a large reduction in pay, the defendant has maliciously, intentionally, and with reckless disregard discriminated against the plaintiff due to her disability, her record of disability, and/or her perceived disability; and has otherwise classified and segregated the plaintiff in a way that has adversely affected her job opportunities because of her disability, history of disability, and the perception of him as a person with a disability. *See* 42 U.S.C. §12112; 42 U.S.C. §12132.

108. The defendant's actions were also unlawful retaliation in response to the plaintiff's request for reasonable accommodations under the ADA.

109. As a proximate result, the plaintiff has suffered extreme harm including, but not limited to, significant loss of wages, compensation and other benefits and conditions of employment. The plaintiff has also suffered injury including, pain, humiliation, mental anguish and suffering.

## COUNT II: DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII AND 42 U.S.C. §1981

110. The plaintiff re-alleges all of the allegations in the complaint and incorporates

the same by reference herein.

111.    The defendant intentionally discriminated against the plaintiff on the basis of her race with regard to job assignments, discipline, and other terms and conditions of employment, by reducing her responsibilities and limiting her opportunities for advancement, including initiated a process which forced her into a lesser job with a significant reduction in pay in violation of Title VII and 42 U.S.C. §1981.

112.    The defendant engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

113.    As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

114.    The defendant engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

115.    As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

116.    This claim is brought against the defendant Lowe's as the plaintiff's employer under Title VII and not against individual defendants Martin and Huey.

## COUNT III: DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

117.    The plaintiff re-alleges all of the allegations in the complaint and incorporates

the same by reference herein.

118. The defendant intentionally discriminated against the plaintiff on the basis of her sex with regard to job assignments, discipline, and other terms and conditions of employment, by reducing her responsibilities, reducing her pay, and limiting her opportunities for advancement, in violation of Title VII.

119. The defendant engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

120. As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

121. The defendant engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

**COUNT VI: RETALIATION (TERMINATION) IN VIOLATION OF TITLE VII**

122. The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

123. The plaintiff engaged in protected opposition to illegal discrimination when she sought a reasonable accommodation for her disability under the ADA.

124. The defendant discriminated against the plaintiff on the basis of retaliation with respect to job assignments, discipline, other terms, conditions, and privileges of employment in

violation of the ADA.

125.    The defendant discriminated against the plaintiff by demotion her to a lower-paying and less prestigious position in violation of the ADA.

126.    The defendant engaged in the practices complained of herein with malice and/or reckless indifference to the plaintiff's federally protected rights.

As a result and consequence of the defendant's actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

## V.    **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.    Issue a declaratory judgment that the employment practices, policies, procedures, conditions, and customs that led to the discrimination by defendant violate the rights of the plaintiff as secured by the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, Title VII, 42 U.S.C. §§2000e, *et seq.*, and 42 U.S.C. §1981.

2.    Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and on the defendant's behalf from continuing to violate the ADA and Title VII.

3.    Enter an order requiring the defendant to make the plaintiff whole by

reinstating him in the position he would have occupied in the absence of the discrimination as set out herein, backpay (plus interest), compensatory damages, liquidated damages, and punitive damages.

4.     Award the plaintiff all damages allowed by law, including compensatory damages and attorney fees, for the defendant's breach of this contract.

5.     Award the plaintiff money damages in an amount necessary restore the plaintiff to his prior position and to prevent unjust enrichment by defendant.

6.     The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney fees and expenses, to the extent permitted by law.

7.     The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief is the plaintiff's only means of securing adequate relief.

Respectfully submitted,

*/s/ H. Wallace Blizzard*
H. Wallace Blizzard (asb-8969-b59h)
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
wblizzard@wigginschilds.com
Telephone: (205) 314-0593
Facsimile: (205) 314-0593

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.**

> */s/ H. Wallace Blizzard*
> OF COUNSEL

**Defendant's Address:**
AT&T Mobility Services, LLC
c/o C T Corporation System
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

> */s/ H. Wallace Blizzard*
> OF COUNSEL